1  WRIGHT, FINLAY & ZAK, LLP
2  Jonathan M. Zak, Esq., SBN 121592
   Giavanna C. DePrima, Esq. SBN: 243455
3  4665 MacArthur Court, Suite 280
4  Newport Beach, CA 92660
   (949) 477-5050; Fax: (949) 477-9200 *(Valasquez/Pleadings/MTD)*
5  jzak@wrightlegal.net
6
7  Attorneys for
   MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.
8
9              UNITED STATES DISTRICT COURT
10
              NORTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  ANGEL VALASQUEZ, | ) Case No.: CV-083818 |
| 13            Plaintiff, | )<br>) **Assigned to Magistrate Judge** |
| 14 | ) **Edward M. Chen** |
| 15      vs. | )<br>) **MORTGAGE ELECTRONIC** |
| 16  MORTGAGE ELECTRONIC | ) **REGISTRATION SYSTEMS, INC.'S** |
| 17  REGISTRATION SYSTEMS, INC.; | ) **NOTICE OF MOTION AND** |
|     ANGELA M. BACA, an Individual; | ) **MOTION TO DISMISS THE** |
| 18  S.T. FUNDING; AMERICAN | ) **COMPLAINT FOR FAILURE TO** |
| 19  MORTGAGE NETWORK, INC.; | ) **STATE A CLAIM, [F.R.C.P. RULE** |
| 20  NORTHWEST TRUSTEE SERVICES; | ) **12 B)(6)]; MEMORANDUM OF** |
|     and DOES 1 through 10, inclusive, | ) **POINTS AND AUTHORITIES** |
| 21 | ) |
| 22            Defendants. | ) Date:  October 8, 2008 |
| 23 | ) Time: 10:30 a.m.<br>) Dept. C |
| 24 | ) |
| 25 | ) *[Filed concurrently with Request for*<br>) *Judicial Notice]* |

26  **TO PLAINTIFF AND HER ATTORNEY OF RECORD, IF ANY:**

27      **PLEASE TAKE NOTICE** that on October 8, 2008, at 10:30 a.m., or as

28  soon thereafter as the matter may be heard in the above-entitled Court, located at

-1-

1  450 Golden Gate Ave., San Francisco, CA 94102-3483,   Defendant MORTGAGE

2  ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS" or "Defendant")

3  will move the Court, pursuant to FRCP Rule 12 (b) (6) to Dismiss the Complaint

4  of ANGEL VALASQUEZ ("Plaintiff") for failure to state a claim upon which

5  relief can be granted.

6      The Motion to Dismiss will be based on the notices of motion, and motion,

7  the request for judicial notice filed concurrently herewith, the memorandum of

8  points and authorities, and the pleadings and papers on file with the Court.

9                          Respectfully submitted,

10                      WRIGHT, FINLAY & ZAK, LLP

11

12  Dated: August 21, 2008      By:    */Jonathan M. Zak /*

                            Jonathan M. Zak, Esq.

13                              Giavanna C. DePrima, Esq.

                            Attorneys for Defendant,

14                              MORTGAGE ELECTRONIC

15                              REGISTRATION SYSTEMS, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

                        -2-

# TABLE OF CONTENTS

**Page No.**

MEMORANDUM OF POINTS AND AUTHORITIES                                        3

I.      PROCEDURAL HISTORY OF THE REMOVAL                                  3

II.     INTRODUCTION                                                       3

III.    STATEMENT OF FACTS                                                 4

IV.     ANALYSIS                                                           5

        Lenders and the Residential Mortgage Market                        5

        The Creation of MERS                                               6

        How MERS Works                                                     6

        The Entire Complaint is Barred Because Plaintiff Has Failed to
        Tender the Amounts Owed Under the Note and Deed of Trust           7

        A.      The Cause of Action for Declaratory Relief Fails to
                State a Claim                                              9

        B.      The Cause of Action to Set Aside Wrongful Foreclosure
                Fails to State a Claim                                     10

        C.      The Cause of Action for Slander of Title Fails to State a Claim    11

        D.      The Cause of Action for Lender Fraud Fails to State a Claim    13

        E.      The Cause of Action for Statutory Violations of RESPA
                Fails to State a Claim and is Barred by the Statute of
                Limitations                                                14

                Plaintiff's RESPA Claims are Time-Barred                   14

                Plaintiff's Claims are Insufficient to Support Punitive Damages    15

1

2

**TABLE OF AUTHORITIES**

Page No.

3 **Cases**

4  *Aetna Life Ins. Co. v. Alla Medical Services, Inc.* (9th Cir. 1988)
5      855 F2d 1470      4

6  *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101      7

7  *Arnolds Management Corp. v. Fisher* (1984) 158 Cal.App.3d 575      8

8  *Brousseau v. Jarrett,* 73 Cal.App.3d 864, 141 Cal.Rptr. 200 (1977)      16

9  *California Water &Telephone Co. v. County of Los Angeles* (1967)
10     253 Cal.App.2d 16      10

11 *Collins v. Eli Lilly Co.* (1984) 116 Wis.2d 166, 342N.W.2d      17

12 *Copsey v. Sacramento Bank,* 133 Cal. 659,
13     at p. 662, 66 P./ 7, 85 Am. St.Rep. 238      11

14 *F.P.B.I. Rehab 01 v. E&G Investments, Ltd.* (1989) 207 Cal.App.3d 1018      8

15 *Gudger v. Manton* (1943) 21 C.2d 537, 134 P.2d 217.      12
16

17 *Haigler v. Donnelly,* 18 Cal.2d 674, 117 P.2d 331 (1941)      16

18 *Karlsen v. American Savings & Loan Assoc.* (1971) 15 Cal.App.3d 112      7

19 *Lane v. Residential Funding Corp.* (9th Cir.2003) 323 F3d 739      15

20 *Magallanes v. Sup. Ct.* (1985) 167 Cal.App. 878, 213 Cal.Rptr. 547      17
21

22 *Mortgage Electronic Registration Systems, Inc. v. Oscar Revoredo,*
    955 So.2d 33, 34 (Fla.3d DCA 2007)      10

23 *Mortgage Electronic Registration Systems, Inc. v. George Azize,*
24     965 So. 2d 151 (Fla. 2d DCA 2007)      10

25 *Mortgage Electronic Registration Systems, Inc. v. Coakley,*
26     2007 NY Slip Op 05478 (N.Y. App.Div. 6/19/2007)      10

27 *Pacific States Savings & Loan Co. v. North American Co.* 37 Cal.App. 2d 307      10

28 *Rush v. Nevada Indus. Comm.* 94 Nev. 403 580 P.2d 952 (178)      16

*Santes v. Los Angeles Finance Co.* (1949) 91 Cal.App. 2d197, 202     10

*Scafindi v. Western Loan and Building Company* (1946) 72 Cal.Ap.2d 550     13

*Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*
    (1991) 227 Cal.App.3d 318     12

*Tarmann v. State Farm Mutual Auto Insurance Company*
    (1991) Cal.App.4th 153     14

*United States Cold Storage v. Great Western Savings & Loan Assoc.*
    1985) 165 Cal.App.3d 1214     7

*Wadleigh v. Phelps (*1906) 149 Cal. 627     9

*Woodson v. Winchester* (1911) 16 Cal.App. 472, 117 P. 565     13

**Other Authorities**

Miller & Starr, California Real Estate, §9, 154, pp. 507-8 (2d Ed. 1989)     8

Summary of California Law (2005) B.E. Witkin, 10th Ed. §642     12

5 Witkin, California Procedure, Third Edition, Pleadings §662     13

5 Witkin, California Procedure Before Trial (4th ed 1997) Pleading §668     14

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    PROCEDURAL HISTORY OF THE REMOVAL

3   Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,

4   INC. ("MERS" or "Defendant") Removed this action from the state court on

5   August 11, 2008.

6       For a defendant who has not responded to the complaint at the time of

7   removal, a response is due 20 days after service of the complaint, or 5 days after

8   the removal is filed, whichever is later.  (F.R.C.P. Rule 81 (c) (2))  In this case, the

9   date of service on MERS, or any other defendant, is not clear. Further, the Ninth

10  Circuit has held that Rule 12(b) motions are timely if filed any time before the

11  answer or other responsive pleading is filed.[1]  Therefore, this Motion is timely

12  before the Court. Thus, MERS hereby responds to Plaintiff's Complaint following

13  the recent Removal of the action.

14      However, in the event that the Court deems the motion untimely, MERS

15  respectfully requests that the Court consider this Motion a Motion for Judgment on

16  the Pleadings under Rule 12 (c) which can be brought at any time after the

17  pleadings have been served and filed.

18

### II.    INTRODUCTION

19      Plaintiff's Complaint is a frivolous attempt to avoid a legitimate loan

20  obligation.  Using an array of well-worn theories of recovery, the Complaint

21  contains very little in the way of factual allegations.  Aside from blanket

22  allegations against "All Defendants" and wholly deficient causes of action, the

23  Complaint simply has no merit.

24      Essentially, this Complaint, like the others, alleges the Defendants are

25  wrongfully foreclosing on Plaintiff's real property. Further, Plaintiff relies on the

26  mistaken notion that MERS is not a valid beneficiary and therefore, not entitled to

27  seek foreclosure of the deed of trust. However, this premise is legally incorrect.

28

-3-

1       This motion to dismiss is directed at the claims for declaratory relief (1st), to

2  set aside the foreclosure sale (3rd), slander of title (4th), reformation of contract

3  based on lender fraud (5th), statutory violations of RESPA (6th), and the improper

4  prayer for Punitive Damages.

5       As set forth below, the claims asserted by Plaintiff are entirely insufficient to

6  state a claim upon which relief can be granted. Not only has Plaintiff failed to

7  adequately tender payments necessary, there is an utter lack of factual information

8  and analysis to the claims alleged. Therefore, this Motion to Dismiss should be

9  granted.

10                  **III. STATEMENT OF FACTS**

11       This lawsuit arises out of a claim by Plaintiff that Defendants are wrongfully

12  attempting to foreclose on a senior Deed of Trust secured by the real property

13  located at 38020 Old State Road Gualala, California 95445 ("Property"). Said

14  senior Deed of Trust secures Plaintiffs' loan for $445,600.00, while the junior

15  Deed of Trust secures Plaintiffs' loan for $111,400.00.[2] Sometime after

16  origination, Plaintiff defaulted on his loan obligations, and a foreclosure

17  proceeding was commenced. As evidenced by these recorded documents, MERS

18  is identified as the nominee for the beneficiary on both Deeds of Trust.

19  Furthermore, as specified in the Deeds of Trust themselves, MERS is empowered

20  with Lender's rights, including but not limited to, the power to foreclose under the

21  Deeds of Trust.[3]

22       Although Plaintiff admits to both the making of these loans with Defendants,

23  *and* the subsequent *defaults* of said loans, [4] he has failed to attach any relevant

24  documents to his complaint in support of their myriad of claims surrounding the

25  purported improper foreclosure proceedings.

26

27  [1] *Aetna Life Ins. Co. v. Alla Medical Services, Inc.* (9th Cir. 1988) 855 F2d 1470, 1474.

28  See Deed of Trusts attached to Defendants Request for Judicial Notice Exhibits "1" and "2", respectively.
[3] See Sections E and R of Deed of Trusts attached to Defendants Request for Judicial Notice Exhibits "1" and "2", respectively.

1    Thus, the undisputed facts underlying this lawsuit are that Plaintiff has
2  outstanding mortgage loans secured by their Property, wherein MERS is acting as
3  the nominee for the beneficiaries, and Plaintiff is in default on both loans.

4                              **IV. ANALYSIS**

5    Federal Rules of Civil Procedure, Rule 12 (b)(6) authorizes this Court to
6  dismiss a pleading for failure to state a claim upon which relief can be granted.
7  The causes of action discussed below have failed to state such claims, and hence,
8  the Court has authority to grant the Motion to Dismiss.

9    Further, since Plaintiff's claims against Defendant MERS are predicated
10  upon the improper concept that MERS has no effective powers under deeds of
11  trust, including the rights to foreclose, MERS has herein provided brief
12  background knowledge of MERS as an onset for the analysis below.

13          **Lenders and The Residential Mortgage Market**

14    MERSCORP, Inc. and MERS were companies formed to play an integral
15  part in a federally established free-market system created to increase liquidity in
16  the market for home loans. When a mortgage lender loans money to a home buyer,
17  it obtains a promissory note (the "Note") in the form of a negotiable instrument
18  from the borrower, as well as a mortgage instrument in the form of a deed of trust
19  (the "Deed"). The Deed is then recorded in the public, local land records. In
20  almost all instances, however, the lender does not continue to hold the Note.
21  Instead, the lender sells the Note into the secondary mortgage market, most often
22  to one of the government or government-sponsored entities created by statute to
23  purchase residential mortgage loans from banks and other lenders. *See* 12 U.S.C.
24  §§ 1451-59, 1716-23 *et seq.* (creating the Government National Mortgage
25  Association ("Ginnie Mae"), Federal National Mortgage Association ("Fannie
26  Mae"), and Federal Home Loan Mortgage Corporation ("Freddie Mac")). In turn,
27  these entities resell Notes into a tertiary mortgage-backed securities market,

28  _____

[4] See Complaint, Paragraphs 8 and 15.

1  usually as part of a bundle of Notes held in trust for investors. As a result, the notes
2  are held for the benefit of numerous people simultaneously, whose identities
3  change as these negotiable instruments are sold and resold in these markets, and as
4  the investors sell and resell their shares in the mortgage-backed securities.

5      Because of the secondary and tertiary mortgage markets, the original lender
6  is then able to make the funds from the first sale of the Note available to additional
7  home buyers. The availability of these funds is the specific and intended result of
8  the statutes that created the government and government sponsored entities—to
9  increase funds for home ownership in the United States. *See* 12 U.S.C. §§ 1451,
10 1716.

11         **The Creation of MERS**

12     In 1993, the Mortgage Bankers Association, Ginnie Mae, Fannie Mae,
13 Freddie Mac and others in the real estate finance industry created an electronic
14 registration and tracking system that is similar to the process used with great
15 success by the Depository Trust Company for the securities industry.
16 MERSCORP, Inc. was formed to track both beneficial ownership interests in, and
17 servicing rights to, mortgage loans as they change hands throughout the life of the
18 loan. This tracking assists the mortgage banking industry by reducing questions
19 regarding these contractual interests as they are bundled into mortgage-backed
20 securities. In this manner, MERSCORP, Inc. facilitates liquidity in the secondary
21 mortgage markets. MERS serves as the mortgagee or beneficiary on the respective
22 mortgages or deeds of trust, as the nominee for the MERS member.

23         **How MERS Works**

24     Upon the purchase of a home, the borrower signs a mortgage contract that
25 names MERS as the beneficiary (as "nominee" for the lender and its successors
26 and assigns). In the mortgage contract, the borrower assigns his or her right, title,
27 and interest in the property to MERS. The borrower contractually agrees that, in
28 the event of default, MERS is the proper party to foreclose on the home. The

-6-

1 | mortgage instrument is then recorded in the public, local land records with MERS
2 | as the named beneficiary. When the Note is sold by the original lender to others,
3 | the various sales of the Notes are tracked on the MERS® System. As long as the
4 | sale of the Note involves a member of MERS, MERS remains the named
5 | mortgagee of record and continues to act as a nominee for the new noteholder.
6 | This relationship is memorialized in the original Deed of Trust to which the
7 | borrower is a party, as well as in the MERS membership agreements. If a member
8 | is no longer involved with the Note after it is sold, an assignment from MERS to
9 | the non-MERS member is recorded in the county where the real estate is located,
10 | and the loan is "de-activated" from the MERS® System.

11
12

### The Entire Complaint is Barred Because Plaintiff Has Failed to Tender the Amounts Owed Under the Note and Deed of Trust.

13 | In order to bring any of the claims alleged within Plaintiff's Complaint, he
14 | must first tender payment of the outstanding amounts due on the loans. Plaintiff
15 | has not made such a tender, and thus, all his claims therein are barred.

16 | Plaintiff's Complaint purports to challenge Defendants' attempt to conduct a
17 | foreclosure sale, or, in the alternative, seeks to set aside a sale that has already been
18 | completed. However, nowhere in the Complaint does Plaintiff allege that he has
19 | tendered the amounts owed under the loan, nor can he. Absent a tender of the
20 | undisputed amounts, Plaintiff cannot invoke the court's equitable powers to stop
21 | Defendants from exercising its agreed upon power of sale.

22 | As a matter of law, in order to challenge a foreclosure sale for any reason, or
23 | set it aside, or to bring any claim that arises from a foreclosure sale, a plaintiff
24 | needs to allege proper tender.[5] (emphasis added) The Court of Appeals of
25 | California has explained:

26
27

[5] *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109 (emphasis added.); see also, *United States Cold Storage v. Great Western Savings & Loan Assoc.* (1985) 165 Cal.App.3d 1214, 1222; *Karlsen v. American Savings & Loan Assoc.* (1971) 15 Cal.App.3d 112, 117.

-7-

> This rule...is based upon the equitable maxim that a court of equity will not order a useless act performed....if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.[6]

As a condition precedent to any action challenging a foreclosure, the borrower must tender or offer to tender a sum sufficient to cure the default.[7] Absent an allegation of tender, the Complaint fails to state a cause of action.[8] Further, the tender must have been made in *good faith*; the party making the tender must have had the *ability to perform*; and the tender must have been *unconditional*.[9] This tender requirement has been extended to apply to "any cause of action" arising from an alleged improper foreclosure.[10]

This unconditional tender requirement is essential here, because only tendering the full amount prior to sale will enable Plaintiff to maintain his action. Under *Civil Code section 2924c (e)*, the right to reinstate the loan (to cure the default) terminates five business days prior to the notice of trustee's sale date. Thereafter, a borrower only has a *right to redeem* her property under *Civil Code sections 2903 and 2905*. Basically, in order to redeem, he would have to pay the entire debt plus costs, other than just past arrearages.[11] Further, this right to redeem ceases once the bidding begins at a trustee's sale and henceforth the only hope a debtor has to set aside a sale is to pay the entire indebtedness owed. Thus, tendering of payments is a prerequisite to maintaining such actions.

Here, Plaintiff has not and cannot allege that he tendered the amounts owed under the note at any time. Accordingly, Plaintiff cannot challenge or set aside the

---

[6] *F.P.B.I. Rehab 01 v. E&G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1021.

[7] *Karlsen*, supra., at p. 117 (judgment on the pleadings granted); *Arnolds Management Corp. v. Fisher* (1984) 158 Cal.App.3d 575, 578-579; see also, 4 Miller & Starr, California Real Estate, §9, 154, pp. 507-8 (2d Ed. 1989) and authorities cited therein.

[8] See, *Karlsen, supra.,* at p. 117.

[9] See, Miller & Starr, *supra.*; see also, *Civil Code* §1486 (full performance), 1493 (good faith), 1494 (unconditional) and 1495 (offeror must have ability to perform).

[10] *Karlsen, supra.,* at p. 117; *Arnolds Management Corp. v. Fisher, supra.,* 158 Cal.App.3d at 578-579

-8-

1   foreclosure sale, or maintain any claim arising therefrom.  As such, the court

2   should sustain Defendant's Demurrer to the entire complaint.

3   ## A. The Cause of Action for Declaratory Relief Fails to State a Claim.

4       Since Plaintiff's Complaint fails to state a claim with respect to the

5   following causes of action, their First claim for declaratory relief claim so too fails

6   as a matter of law. This claim seeks a remedy regarding the other claims alleged,

7   and as the other claims cannot survive, it is thus moot.  In addition, Declaratory

8   Relief is a remedy rather than a cause of action.  Therefore, the court will be

9   unable to determine if there was a violation of Declaratory Relief.

10      Furthermore, Plaintiff has relied on the inaccurate allegation that "none of

11  the Defendants were the actual beneficiary or trustees…" and they "…did not have

12  the right to seek foreclosure…"[12]  Yet, as evidenced in the title documents, MERS

13  clearly has beneficiary powers and a valid assignment and substitution was made

14  affecting the Deed of Trust over the Property leading up to the eventual foreclosure

15  of the Property.[13]

16      First, assignments are completely valid under deeds of trust. Contrary to

17  Plaintiffs' contention, Civil Code §2936, which was enacted in 1872 specifically

18  states that "The assignment of a debt secured by mortgage carries with it the

19  security."  Regardless of whether an assignment is recorded or not, the law in

20  California is well established that transfer of a note carries with it the security

21  instrument and the trust deed is a mere incident of the debt, and can be foreclosed

22  by the owner of the note.  Such is the holding of the California Supreme Court in

23

24

25

26

27  [11] See *Wadleigh v. Phelps (1906) 149 Cal.627, 642, 643.*

[12] Complaint, Paragraphs 19 and 21.

28  [13] See Substitution of Trustee and Assignment of Deed of Trust attached to Defendant's accompanying Request for Judicial Notice as Exhibits "4" and "5" respectively.

-9-

1  the case of *Adler v. Sargent*[14] (also cited as Adler v. Newell) dated 1895. *Adler* is

2  relied on by contemporary cases.[15]

3    Second, Plaintiff has conveniently left out of his Complaint the relevant

4  portion of the Deed of Trust that specifies that MERS possesses "nominee

5  beneficiary" powers, including but not limited to, the right to foreclose.[16] As set

6  forth in the Deed of Trust, *Plaintiff actually contracted to allow MERS to act as*

7  *nominee* for the lender and all its successors and assigns, and exercise all lender

8  rights under said Deed of Trust. Furthermore, by analogy, other state courts

9  reviewing this issue have affirmed that MERS, acting as the nominee for the

10  lender, *has legal standing to foreclose*.[17]

11    Moreover, based upon the inadequacy of Plaintiff's factual allegations, there

12  is no actual controversy present to warrant such declaratory relief. "A controversy

13  is 'ripe' when it has reached, but has not passed, the point that the facts have

14  sufficiently congealed to permit an intelligent and useful decision to be made."[18]

15  Here, Plaintiff is wrongly trying to suggest that Defendant, though not the actual

16  beneficiary, did not have the power to foreclose, which the law and facts clearly

17  negate. Therefore, there is no controversy in the facts Plaintiff has alleged.

18    As such, the Claim for Declaratory Relief fails to state a claim for relief.

19  **B.  The Cause of Action to Set Aside Wrongful Foreclosure Fails to State a**

20    **Claim.**

21    This claim also must fail, because Plaintiff has not met the requisite

22  requirements and his contentions are ultimately without merit against Defendant

23  MERS.

24

25  [14] 109 Cal.42, 48.

26  [15] See *Santes v. Los Angeles Finance Co.* (1949) 91 Cal.App. 2d197, 202; *Pacific States Savings & Loan Co. v. North American Co.* 37 Cal.App. 2d 307, 309.

27  [16] See Deed of Trust attached to Defendants' Request for Judicial Notice, Exhibit "1", Sections (E) and (R).
[17] *See, e.g., Mortgage Electronic Registration Systems, Inc., v. Oscar Revoredo,* 955 So. 2d 33, 34 (Fla. 3d DCA

28  2007); *Mortgage Electronic Registration Systems, Inc., v. George Azize,* 965 So. 2d 151 (Fla. 2d DCA 2007); *Mortgage Electronic Registration Systems, Inc., v. Coakley,* 2007 NY Slip Op 05478 (N.Y. App. Div., 6/19/2007).
[18] *California Water &Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22.

1      As initially stated at the outset of this Demurrer, Plaintiff's Complaint

2 contains no allegations that Plaintiff *tendered payment,* which is a pre-condition to

3 maintenance of this action.

4      "It is apparent from the general tenor of the decisions that an action to set

5 aside the sale, unaccompanied by an offer to redeem, would not state a cause of

6 action which a court of equity would recognize". [19] Thus, it is clear that prior to

7 bringing such an action challenging or arising out of a foreclosure, there must first

8 be an allegation of a tender of payment from the Plaintiff. Since Plaintiff has not

9 met this threshold requirement, no action should lie.

10      Furthermore, as mentioned above, Plaintiff contracted with the Lender and

11 Trustee to allow MERS to act as the "nominee beneficiary," which ultimately

12 carries with it the power to foreclose.[20] As provided in the documents attached to

13 MERS' Request for Judicial Notice, proper foreclosure proceedings were instituted

14 against Plaintiff following Plaintiff's delinquency. These powers were properly

15 administered pursuant to the terms of the Note and Deed of Trust. All Plaintiff can

16 do now is tender the full payment owing, and since he has not done so, this claim

17 cannot survive.

18      Moreover, the few unsupported statements within this claim are simply

19 without merit. [21] Not only was the instigation of foreclosure over Plaintiff's

20 property completely proper and fully in accord with California laws, but Defendant

21 MERS does have the legitimate right to foreclose per the terms of the deed of trust

22 with Plaintiff. Thus, Plaintiff has failed to state a claim here.

23 **C. The Cause of Action for Slander of Title Fails to State a Claim.**

24      Plaintiff has also failed to establish a Slander of Title claim against the

25 Defendants and said claim should thus fail.

26

27

28

---

[19] *Karlsen, supra.,* at p. 117, quoting *Copsey v. Sacramento Bank,* 133 Cal. 659, at p. 662, 66 P. 7, 204, 85 Am.St.Rep. 238.
[20] See Deed of Trust attached to Defendants' Request for Judicial Notice, Exhibit "1", Sections (E) and (R), and Paragraph 24.

1   Slander of Title is a false and unprivileged disparagement, oral or written, of

2   the title to real or personal property, resulting in actual pecuniary damage.[22]  The

3   elements of Slander of Title are (1) publication; (2) falsity; (3) absence of

4   privilege; (4) and disparagement of another's land which is relied upon by a third

5   party and which results in pecuniary loss.[23]  Furthermore, fictional malice or

6   malice implied-in-law from the unprivileged character of the act is required.[24]

7   Here, Plaintiff does not state any facts alleging that Defendant MERS

8   committed Slander of Title with regard to the Property.  Plaintiff's statements are

9   blanket conclusions without any support or specificity to establish this claim.  The

10  meager statement that the "sale and recording of this false deed" slandered

11  Plaintiff's title[25] is insufficient to meet the requisite elements for Slander of Title

12  as outlined above.

13  The necessary elements to this claim are not set forth in the Complaint.

14  Plaintiff simply makes her repeated blanket accusations against "Defendants"

15  collectively, without specifying which Defendants or how they relate to the claim

16  or its elements.[26]  Further, Plaintiff has failed to allege or identify *any malice*

17  whatsoever on the part of Defendants in order to state this claim.  The Complaint is

18  void of any intent or maliciousness by Defendants to slander Plaintiff's title;

19  Plaintiff again just concluded that it exists.[27]  "It is simply not tortuous for a

20  commercial lender to lend money, take collateral, or to foreclose on collateral

21  when a debt is not paid."[28]

22

23

24

---

25  [21] See Complaint, Third Claim, *in general.*

26  [22] *Gudger v. Manton (1943) 21 C.2d 537, 541, 134 P.2d 217.*
    [23] *Summary of California Law, (2005), B.E. Witkin, 10th Ed., § 642.  (emphasis added)*

27  [24] *Gudger v. Manton at 544.*
    [25] See Complaint, Paragraphs 41 and 43.

28  [26] See Complaint, Paragraphs 135 and 136.
    [27] See Complaint, Paragraph 42.
    [28] *Sierra-Bay Fed. Land Bank Ass'n v. Superior Court* (1991) 227 Cal.App.3d 318, 334.

-12-

**D. The Cause of Action for Lender Fraud Fails to State a Claim.**

Rather than attempt to plead a cause of action with specificity, Plaintiff begins this claim with an entire page of narration concerning mortgage loans.[29] Not only is this information entirely irrelevant, but the last two paragraphs speak in terms of negligence.[30]

Fraud actions have been classified as "disfavored," and are *subject to strict requirements of particularity and pleading.* Allegations of fraud involve a serious attack on character, and fairness to the Defendants demand that they should receive the fullest of details of the charge in order to prepare their defense. Here, Plaintiff has wholly failed to plead the specific facts necessary to satisfy the strict pleading standard required to make a fraud claim against the Defendant.

The rule is everywhere is that fraud must be specifically pleaded. The effect of this rule is twofold: (a) general pleading of the legal conclusion of "fraud" is insufficient; the facts constituting the fraud must be alleged; (b) every element of the Plaintiff's cause of action for fraud must be alleged in the proper manner (i.e. factually and specifically), and the policy of liberal construction of the pleadings will not ordinarily be invoked to sustain a pleading defective in any material respect.[31] It is essential that the facts and circumstances which constitute the fraud should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called on to answer, and to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.[32]

The requisite elements to a tort cause of action for fraud and deceit are: (1) Representation; (2) Falsity; (3) Knowledge of falsity; (4) Intent to deceive; and (5)

---

[29] See Complaint, Paragraphs 45-49.
[30] See Complaint, Paragraphs 50-51.
[31] *Scafindi v. Western Loan and Building Company (1946) 72 Cal. Ap.2d 550, 558; also see discussion at 5 Witkin, California Procedure, Third Edition, Pleadings §662, page 111.*
[32] *Woodson v. Winchester (1911) 16 Cal.App. 472, 473, 117 P. 565; Allen v. Ramsay (1960) 179 Cal.App.2d 843, 848, 4 Cal.Rptr. 575.)*

-13-

1  Reliance which results in damage.[33]  The requirements for pleading fraud **against a**
2  ***corporation are even more stringent.***  The requirement of specificity in a fraud
3  action against a corporation requires the Plaintiff to allege the names of the persons
4  who performed the allegedly fraudulent conduct, their authority, and when it was
5  performed, none of which is alleged here.[34]

6       Here, there are no factual allegations, vague or otherwise, that specifically
7  connect Defendant to any sort of fraud. The mere blanket assertions used by
8  Plaintiff are not only lacking in specifying Defendants individually (just referring
9  to the "Defendants"), but there are no specifics alleging any Fraud at all. [35] Plaintiff
10  merely improperly concludes that "the default of Plaintiff was caused…by
11  Defendants 'Negligence' or 'Fraudulent Intent'" [36] Not only is this statement
12  entirely lacking in any legal or factual support, but it is confusing as it combines
13  negligence with fraud.

14       There are no fraud elements here, no legal or factual analysis, and no
15  specifics showing fraud on behalf of MERS.  Thus, the claim has wholly failed to
16  be stated.

17 | 18  **E. The Cause of Action for Statutory Violations of RESPSA Fails to State a**
       **Claim and are Barred by the Statute of Limitations.**

19 | 20      Plaintiff's sixth claim is premised upon statutory violations of RESPA
21 | 22  involving purported "illegal kickbacks".  Since MERS is not a broker or lender and
       thus committed no "illegal kickbacks" and because the statute of limitations has
       expired here in any event, Plaintiff has failed to state such a claim.

23 | 24      Plaintiff's RESPA Claims are Time-Barred.

25 | 26      RESPA (The Real Estate Settlement Procedures Act) has two statutes of
       limitations, a one-year statute of limitations for violations of sections 2607 and

27

28  ---

[33] *See discussion at 5 Witkin, California Procedure Before Trial (4th ed. 1997), Pleading §668, pp.123-124.*
[34] *Tarmann v. State Farm Mutual Auto Insurance Company (1991) Cal.App.4th 153, 157.*
[35] See Complaint, Second Claim, *in general.*

-14-

1   2608, and a three-year statute of limitations for violations of sections 2605. *(12*
2   *U.S.C. § 2614)*

3       Although not named specifically, Plaintiff has brought RESPA claims under
4   *12 U.S.C. § 2607(b)* for alleged "illegal kickbacks" ostensibly against MERS.
5   However, since Plaintiff's RESPA claims are predicated on the loan transaction
6   that took place on or around August 23, 2006[37], the *one year statute of limitation*
7   *for such claims has well lapsed.* Therefore, Plaintiff's RESPA claims are time-
8   barred on the face of the Complaint, and must be dismissed.

9       Even assuming, *arguendo*, that these claims were not time-barred, Plaintiff
10  has failed to state a claim upon which relief can be granted here.   Assuming that
11  Plaintiff is seeking to plead a "yield spread premium" claim by reference to the
12  alleged participation in "kickbacks," *so long as the escrow fee discounts are*
13  *reasonably related to the value of services performed,* there is no violation.[38]

14      Furthermore, Plaintiff has failed to specify how MERS itself  participated in
15  any "illegal kickback;" Plaintiff only mentions other named defendants here and
16  *utterly fails to identify MERS involvement* with these RESPA violations. And the
17  single mention of MERS is premised solely upon the legal contention that: "MERS
18  is not the holder of the Note…"[39]  As already discussed in detail above, MERS is
19  the nominee for the actual beneficiary with full powers of the same.

20      Thus, Plaintiff has therefore failed to state a claim under RESPA against
21  MERS.

22          <u>Plaintiff's Claims are Insufficient to Support Punitive Damages</u>

23
24      In addition to the failed claims stated above, Plaintiff's improper prayer for
25  Punitive Damages should be dismissed. This case alleges a breach of obligations
26  arising from contract, i.e. a loan and deed of trust, and Defendant's ability to

27  _____

28  [36] Complaint, Paragraph 50.
    [37] Complaint, Paragraph 8.
    [38] See *Lane v. Residential Funding Corp.* (9th Cr. 2003) 323 F3d 739, 745.

                                    -15-

1  enforce the Note and Deed of Trust. The fledgling tort claims fail as a matter of
2  law as set forth above.

3      California courts hold that a plaintiff must plead the specific factual
4  allegations of fraud, oppression, or malice to support a request for punitive
5  damages. Vague or conclusory language is not sufficient.[40] Indeed, a request for
6  punitive damages based upon the mere allegations that defendants were "guilty of
7  fraud and oppression," and that their behavior was "characterized by fraud, malice,
8  and oppression," are insufficient and may be stricken.[41]

9      Nothing in the Plaintiffs' Complaint clarifies any malice, fraud, or
10  oppression on the part of MERS. Contrarily, Plaintiffs merely conclude that
11  Defendants conduct was "intentional, knowing and willful...."[42] There is
12  absolutely no factual support for these blanket conclusions against Defendant, let
13  alone any facts tying Defendant to any conduct in this action. Aside from this fatal
14  deficiency, Defendants were simply exercising legal rights to demand payment
15  from a delinquent borrower (Plaintiffs) under a deed of trust. There is nothing
16  malicious, oppressive, or fraudulent about this act.

17      In addition, Plaintiffs have *not properly identified which "defendants" they*
18  are referring to and charging with such egregious conduct. [43] Without factual
19  support showing clearly and convincingly how Defendant MERS, specifically and
20  individually, committed oppressive, malicious, or fraudulent acts against Plaintiff,
21  the punitive damages prayer is unwarranted and improper.

22      "The concept of punitive damages embodies a rule for individualized
23  punishment of a wrongdoer whose conduct toward the plaintiff is particularly

24

25

26  [39] Complaint, Paragraph 59.
27  [40] *Haigler v. Donnelly*, 18 Cal.2d 674, 680, 117 P.2d 331(1941); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 141 Cal.Rptr. 200 (1977).
28  [41] *Rush v. Nevada Indus. Comm.*, 94 Nev. 403, 580P.2d 952 (178).
[42] Complaint, Paragraph 42.
[43] Complaint, Paragraphs 42, 52, 75, 86, and 98.

-16-

1    outrageous." [44]  There is absolutely no way to appropriately punish Defendant

2    MERS here with such excessive damages, where the Plaintiff has not only failed to

3    identify Defendant's involvement or conduct, but has also failed to adequately

4    plead any outrageous and egregious conduct against the Plaintiff to justify this

5    remedy.

6         Moreover, Plaintiffs have improperly requested an (excessive) amount of

7    punitive damages of $5,000,000.00. [45]  Specifying an amount of punitive damages,

8    as Plaintiffs here have done, should thus be stricken.

9                              **V. CONCLUSION**

10        For all of the reasons set forth above, Defendant MERS respectfully requests

11   that the Complaint be dismissed.

12                                     Respectfully submitted,

13                                     WRIGHT, FINLAY & ZAK, LLP

14

15   Dated: August 21, 2008        By:    *Jonathan M. Zak*
                                          Jonathan M. Zak, Esq.
16                                        Giavanna C. DePrima, Esq.
17                                        Attorneys for Defendant,
                                          MORTGAGE ELECTRONIC
18                                        REGISTRATION SYSTEMS, INC.

19

20

21

22

23

24

25

26

27

28   [44] *Magallanes v. Sup. Ct.* (1985)167 Cal.App.3d 878, 889, 213 Cal.Rptr. 547, 554, quoting *Collins v. Eli Lilly Co.* (1984) 116 Wis.2d 166, 342 N.W.2d at page 54.
     [45] *See* Complaint, Paragraphs 43, 52, 75, 86, 98, and demand number 3 on page 20.

                                      -17-

1

## **PROOF OF SERVICE**

2

3

I, Gretchen Grant, declare as follows:

4

5

6

7

8

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

9

10

11

12

On August 21, 2008, I served the within **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM [F.R.C.P. RULE 12 (B)(6); MEMORANDUM OF POINTS AND AUTHORITIES** on all interested parties in this action as follows:

13

[X]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

14

15

16

17

Angel Valesquez
38020 Old State Road
Gualala, CA 95445
707-884-9510
Attorney for Plaintiff in Pro Se

18

19

20

21

22

Steven K. Linkon, Esq.
Routh Crabtree Olsen
3535 Factoria Blvd. SE, Ste 200
Bellevue, WA 98004
425-586-1952; fax: 425-283-5952
Attorneys for Northwest Trustee Services, Inc.

23

24

25

26

U.S. District Court
Northern District
450 Golden Gate Ave
San Francisco, CA 94612

27

28

[X ]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

1

1  [ ]    (BY FACSIMILE) The facsimile machine I used, with telephone no. (949)
2         477-9200, complied with California Rules of Court, Rule 2003, and no error
3         was reported by the machine.

4  [ ]    (BY FEDERAL EXPRESS - NEXT DAY DELIVERY) I placed true and
5         correct copies of thereof enclosed in a package designated by Federal
          Express with the delivery fees provided for.

6

7  []     (State) I declare under penalty of perjury under the laws of the state of
8         California that the foregoing is true and correct.

9  [x]    (Federal) I declare under penalty of perjury under the laws of the United
          States of America that the foregoing is true and correct.

10        Executed on August 21, 2008, at Newport Beach, California.

11

12

13        Gretchen Grant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

1   WRIGHT, FINLAY & ZAK, LLP
2   Jonathan M. Zak, Esq., SBN 121592
    Giavanna C. DePrima, Esq. SBN: 243455
3   4665 MacArthur Court, Suite 280
4   Newport Beach, CA 92660
    (949) 477-5050; Fax: (949) 477-9200 *(Valasquez/Pleadings/RJN)*
5   jzak@wrightlegal.net

6
7   Attorneys for
    MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.
8

9               UNITED STATES DISTRICT COURT
10
              NORTHERN DISTRICT OF CALIFORNIA
11

12  ANGEL VALASQUEZ,                      ) Case No.: CV-083818
                                          )
13                                        )
              Plaintiff,                  )
14                                        ) **MORTGAGE ELECTRONIC**
                                          ) **REGISTRATION SYSTEMS, INC.'S**
15       vs.                              ) **REQUEST FOR JUDICIAL**
                                          ) **NOTICE IN SUPPORT OF**
16  MORTGAGE ELECTRONIC                   ) **MOTION TO DISMISS**
17  REGISTRATION SYSTEMS, INC.;           )
    ANGELA M. BACA, an Individual;        )
18  S.T. FUNDING; AMERICAN                )
19  MORTGAGE NETWORK, INC.;               )
    NORTHWEST TRUSTEE SERVICES;           )
20  and DOES 1 through 10, inclusive,     ) *[Filed concurrently with Motion to*
21                                        ) *Dismiss]*
                                          )
22            Defendants.                 )
                                          )
23                                        )
24                                        )
                                          )
25  _____      )
26
27
28

                                    -1-

Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. hereby requests that the Court take judicial notice of the following:

1.  A Deed of Trust, recorded on September 6, 2006 as Instrument No. 2006-17622 in the Official Records of Mendocino County, California, a true and correct copy of which is attached hereto as Exhibit "1."

2.  A Deed of Trust and Request for Notice of Default, recorded on September 6, 2006 as Instrument No. 2006-17623 in the Official Records of Mendocino County, California, a true and correct copy of which is attached hereto as Exhibit "2".

3.  A Notice of Default and Election to Sell Under Deed of Trust, recorded on November 29, 2007 as Instrument No. 2007-21392 in the Official Records of Mendocino County, California, a true and correct copy of which is attached hereto as Exhibit "3".

4.  An Assignment of Deed of Trust, recorded on March 4, 2008 as Instrument No. 2008-02927 in the Official Records of Mendocino County, California, a true and correct copy of which is attached hereto as Exhibit "4".

5.  A Substitution of Trustee, recorded on March 4, 2008 as Instrument No. 2008-02928 in the Official Records of Mendocino County, California, a true and correct copy of which is attached hereto as Exhibit "5".

-2-

1    6.          A Notice of Trustee's Sale, recorded on March 4, 2008 as

2               Instrument No. 2008-02929 in the Official Records of

3               Mendocino County, California, a true and correct copy of

4               which is attached hereto as Exhibit "6".

5

6

7                               Respectfully submitted,

8                               WRIGHT, FINLAY & ZAK, LLP

9

10   Dated: August 21, 2008      By:    *Jonathan M. Zak*
                                        Jonathan M. Zak, Esq.
11                                      Giavanna C. DePrima, Esq.
                                        Attorneys for Defendant,
12                                      MORTGAGE ELECTRONIC
                                        REGISTRATION SYSTEMS, INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

**EXHIBIT 1**

Recording Requested By:
FIRST AMERICAN TITLE

Return To:

AMERICAN MORTGAGE NETWORK, INC.
P. O. BOX 85463
SAN DIEGO, CALIFORNIA 92186

2006-17622
Pg:1/21

2006-17622
Recorded at the request of
FIRST AMERICAN TITLE
09/06/2006 03:20P
Fee: 67.00 No of Pages: 21

OFFICIAL RECORDS
Marsha A Wharff, Clerk-Recorder
Mendocino County, CA

Prepared By:
HILLARY SMITH

———————————————— |Space Above This Line For Recording Data| ————————————————

# DEED OF TRUST

MIN    1001310-2060629567-1
LOAN NO. 206-629567

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    AUGUST 23, 2006    ,
together with all Riders to this document.
**(B) "Borrower"** is

ANGEL VELASQUEZ, A MARRIED MAN

Borrower's address is  38020 OLD STAGE ROAD, GUALALA, CA 95445
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION

Lender is a   CORPORATION
organized and existing under the laws of  THE STATE OF DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3005 1/01

VMP -6A(CA) (0207).01
Page 1 of 15

VMP Mortgage Forms, Inc.



Lender's address is    P. O. BOX 85463, SAN DIEGO, CA 92186

(D) "Trustee" is    FIRST AMERICAN TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    AUGUST 23, 2006
The Note states that Borrower owes Lender    FOUR HUNDRED FORTY FIVE THOUSAND SIX
    HUNDRED AND 00/100                                                       Dollars
(U.S. $    445,600.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    SEPTEMBER 01, 2036    .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | PREPAYMENT PENALTY RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207).01                        Page 2 of 15                        Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
        COUNTY                        of            MENDOCINO                       :
        [Type of Recording Jurisdiction]                   [Name of Recording Jurisdiction]


LEGAL DESCRIPTION ATTACHED HERETO AND MADE APART HEREOF


Parcel ID Number:   144-234-15                          which currently has the address of
                    38020 OLD STAGE ROAD                                          [Street]
                    GUALALA                         [City], California   95445      [Zip Code]

("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

2006-17622
Pg : 3/21

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

2006-17622
Pg:8/21

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

X _____ (Seal)
ANGEL VELASQUEZ                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

2006-17622
Pg: 14/21

State of California
County of *Mendocino*                          } ss.

On *August 31, 2006*   before me, *Donna Sherwood, Notary Public*
                                                    personally appeared

*Angel Velasquez*

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)
*Donna Sherwood*

```
OFFICIAL SEAL - 1447539
DONNA SHERWOOD
NOTARY PUBLIC - CALIF.
COUNTY OF MENDOCINO
My Comm. Exp. Oct. 28, 2007
```

## RIDER TO NOTE AND SECURITY INSTRUMENT

LOAN NO.     206-629567

THIS RIDER is made this  23RD  day of            AUGUST,   2006       ,        and is
incorporated into and shall be deemed to amend and supplement both the Note and Mortgage, Deed of
Trust or Security Instrument (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Note (the "Note") to    AMERICAN MORTGAGE NETWORK, INC., A
DELAWARE CORPORATION                                                        (the "Lender")
of the same date and covering the property described in the Security Instrument and located at:

38020 OLD STAGE ROAD, GUALALA, CA 95445

[Property Address]

### PREPAYMENT PENALTY - FIRST __ 36 __   MONTHS OF NOTE

You have the right to make payments of Principal at any time before they are due. A payment of
Principal only is known as a "Prepayment". When you make a Prepayment, you must tell the Note
Holder in writing that you are doing so.

Subject to the Prepayment Penalty specified below, you may make a full Prepayment or partial
Prepayment of your obligation. The Note Holder will use all of your Prepayments to reduce the amount
of principal that you owe under this Note. If you make a partial Prepayment, there will be no changes in
the due date(s) or in the amount of your monthly payment unless the Note Holder agrees in writing to
those changes.

If within the 36 month period beginning with the date of the Note, (the "Penalty Period"), you
make a full or partial Prepayment, you will pay a prepayment charge as consideration for the Note
Holder's acceptance of such payment. No prepayment charge will be assessed for any prepayment
made after the Penalty Period.

You may prepay an amount not exceeding twenty percent (20%) of the original principal amount in
any twelve month period commencing from the date of the Note or anniversary dates thereof
without penalty. However, during the Penalty Period, if the aggregate amount of the principal
prepaid in any twelve month period exceeds twenty percent (20%) of the original principal amount
of this loan, then as consideration of the acceptance of such Prepayment and in addition to any
other sum payable hereunder, you agree to pay the Note Holder hereof a sum equal to six (6)
months interest on the amount prepaid in excess of twenty percent (20%) of the original principal
amount at the rate specified in the Note.

Such additional sums shall be paid whether prepayment is voluntary or involuntary including any
prepayment affected by the exercise of any acceleration provisions contained in the Note to which
this Rider is attached, or in the Security Instrument securing the Note to which this Rider is
attached.

2006-17622
Pg : 16/21

1/18/05                                    Page 1 of 2                                    ACST1551

15SST                                                        B3CA

Notwithstanding the forgoing, in the event of a full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first twelve (12) months from the date of the Note, no Prepayment penalty will be assessed. In that event, you must provide the Note Holder with evidence acceptable to the Note Holder of such sale. For purposes of the exception of the Prepayment charge, a sale of the property to a person or entity with whom you have a personal or business relationship (such as a family member, builder, developer or employer) will be presumed NOT to be a bona fide sale of the property to an unrelated third party.

All other terms and conditions of the Note remain in full force and effect.

By signing below, Borrower accepts and agrees to the terms and provisions contained in this Rider to Note and Security Instrument.

## NOTICE TO BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayments in the loan agreement.

_____    8/31/06
ANGEL VELASQUEZ                        Date

_____
                                       Date

_____
                                       Date

_____
                                       Date

2006-17622
Pg: 17/21

LOAN NO. 206-629567

# Interest Only Adjustable Rate Rider

( ONE YEAR    LIBOR Index (As Published in *The Wall Street Journal*) – Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 23RD day of      AUGUST ,
2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to    AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
38020 OLD STAGE ROAD, GUALALA, CA 95445

[Property Address]

> **THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN
> MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE
> LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN
> CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST
> PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.000 %. The Note provides for changes in the interest rate
and monthly payments, as follows:

**"3.    PAYMENTS**
     **(A) Time and Place of Payments**
     I will make a payment on the 1ST day of every month, beginning on OCTOBER 01, 2006 .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will
consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and
interest by making a payment every month as provided below.
     I will make my monthly payments of principal and interest beginning on the First Principal and Interest
Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid
all of the principal and interest and any other charges described below that I may owe under this Note. Each
monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and
interest, it will be applied to interest before Principal. If, on SEPTEMBER 01, 2036 , I still owe amounts
under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
     I will make monthly payments at P. O. BOX 85302
                                     SAN DIEGO, CA 92186

12/27/04                              Page 1 of 3                              ACST368

368ST

LOAN NO. 206-629567

or at a different place if required by the Note Holder.

**(B) Amount of My Monthly Payments**

My initial monthly payments will be in the amount of U.S. $   2,599.33. This amount may change with the first monthly payment after the first Change Date and the first monthly payment after every Change Date thereafter. Each of these payments will be in an amount sufficient to pay the interest due on the unpaid principal balance at the rate determined as described in Section 4 of this Note. However, starting with the First Principal and Interest Payment Due Date, my monthly payments will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of SEPTEMBER    , 2011, and the adjustable interest rate I will pay may change on that day every TWELFTH    month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for ONE YEAR    U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of   45   days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000         percentage points (    2.250  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.

For each Change Date until the Change Date immediately prior to the First Principal and Interest Payment Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to pay only the interest on the unpaid principal that I am expected to owe at the Change Date as it accrues. The result of this calculation will be the new amount of my monthly payment. For each Change Date beginning with the Change Date immediately prior to the First Principal and Interest Payment Due Date, and for each Change Date thereafter, the Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.000   % or less than   2.250    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000         percentage point(s) (   2.000    %) from the rate of interest I have been paying for the preceding  12   months. My interest rate will never be greater than    13.000         % or less than    2.250    %.



2006-17622
Pg : 19/21

LOAN NO. 206-629567

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after    SEPTEMBER 01, 2016    ."

_____ (Seal)
ANGEL VELASQUEZ                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

2006-17622
Pg: 20/21

Title Order Number:

File Number:          2304-2469109

Legal Description

**Exhibit "A"**

Real property in the unincorporated area of the County of Mendocino, State of California, described as follows:

LOT 24 OF BLOCK 4 AS NUMBERED AND DESIGNATED UPON THE MAP OF OCEAN RIDGE SUBDIVISION #1, FILED JULY 8, 1964 IN MAP CASE 2, DRAWER 3, PAGE 17, MENDOCINO COUNTY RECORDS.

APN: 144-234-15-00

**EXHIBIT 2**

Recording Requested By:
GreenPoint Mortgage Funding, Inc.

Return To:

GreenPoint Mortgage Funding, Inc.
981 Airway Court, Suite E
Santa Rosa, CA 95403-2049

Prepared By:
GreenPoint Mortgage Funding, Inc.
100 Wood Hollow Drive, Novato, CA
94945

**2006-17623**
**Pg: 1/7**

2006-17623
Recorded at the request of
FIRST AMERICAN TITLE
09/06/2006 03:20P
Fee: 32.00 No of Pages: 7

OFFICIAL RECORDS
Marsha A Wharff, Clerk-Recorder
Mendocino County, CA

# DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

MIN 100013800903730691

THIS DEED OF TRUST is made this **31st**          day of **August, 2006**          , among the Trustor,
**Angel  Velasquez, a married man**

whose address is **PO Box 1452, Gualala, CA 95445-**

                                                                                    (herein "Borrower"),
**Marin Conveyancing Corp.**

                                                                    (herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **GreenPoint Mortgage Funding, Inc.**

                                                                                ("Lender") is organized and
existing under the laws of **the State of New York**                              , and has an address of
**100 Wood Hollow Drive, Novato, CA 94945**
    BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in the County of **Mendocino**
                      , State of California:
**As more particularly described in exhibit "A"attached hereto and made a part hereof.**

Parcel ID Number: **144-234-15-00**
**38020 Old Stage Road**                                              which has the address of
**Gualala** .                                                                      [Street]
                                    [City], California 95445            [ZIP Code] (herein "Property Address");
                                                                                    3069

CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

VMP-76N(CA) (0408)                  Form 3805
®                                   Amended 9/99
Page 1 of 6
        VMP Mortgage Solutions, Inc. (800)521-7291

**THIS DEED OF TRUST IS JUNIOR
AND SUBORDINATE TO A DEED
OF TRUST RECORDED
IMMEDIATELY PRECEDING**

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **August 31, 2006**

and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. **$111,400.00**                , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **September 1, 2036**         ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and later charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

3069



2006-17623
Pg: 2/7

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict

3069



 2006-17623
Pg : 3/7

shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees;

3069




and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

## REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower ~~and Lender~~ request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _immediately preceeding_ , in Book _____ , Page _____ , records of **Mendocino** _____ County, or filed for record with recorder's serial number _____ , **Mendocino** County, California, executed by  **Angel Velasquez**

as trustor (or mortgagor) in which **GreenPoint Mortgage Funding, Inc.**

as beneficiary (or mortgagee) and **Marin Conveyancing Corp.**                                    is named

be mailed to **GreenPoint Mortgage Funding, Inc.**                                                 as trustee
at **100 Wood Hollow Drive, Novato, CA 94945**

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

_____
Angel Velasquez

_____
GreenPoint Mortgage Funding, Inc.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)
Angel Velasquez                   -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

*[Sign Original Only]*

State of California
County of Mendocino
On August 31, 2006      , before me Donna Sherwood, Notary Public
                                          , personally appeared

Angel Velasquez

                                          , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Donna Sherwood
Donna Sherwood

OFFICIAL SEAL - 1447539
DONNA SHERWOOD
NOTARY PUBLIC - CALIF.
COUNTY OF MENDOCINO
My Comm. Exp. Oct. 28, 2007

Title Order Number:
File Number:      2304-2469109

## Exhibit "A"

Real property in the unincorporated area of the County of Mendocino, State of California, described as follows:

LOT 24 OF BLOCK 4 AS NUMBERED AND DESIGNATED UPON THE MAP OF OCEAN RIDGE SUBDIVISION #1, FILED JULY 8, 1964 IN MAP CASE 2, DRAWER 3, PAGE 17, MENDOCINO COUNTY RECORDS.

APN: 144-234-15-00

**EXHIBIT 3**

2007-21392
Pg: 1/2

2007-21392
Recorded at the request of
TITLE COURT SERVICE
11/29/2007 11:29A
Fee: 10.00 No of Pages: 2

OFFICIAL RECORDS
Marsha A Wharff, Clerk-Recorder
Mendocino County, CA

Recording requested by:

When recorded mail to:
NORTHWEST TRUSTEE SERVICES, INC.
505 N. Tustin Avenue, Suite 243
Santa Ana, CA 92705

Space above this line for Recorder's use

File No. 8102.20627          Loan No.100456425      MIN No. 1001310-2060629567-1

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION. You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$12,670.08** as of **11/28/07**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

AVELO MORTGAGE, LLC
C/O Northwest Trustee Services, Inc.
505 N. Tustin Avenue, Suite 243 Santa Ana, CA 92705
Telephone (714) 277-4888
Reinstatement and Pay-Off Request Line (866) 387-NWTS

TS No.: 8102.20627
Loan No. 100456425
Notice of Default and Election to Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:    That the undersigned is either the original Trustee, the duly appointed substituted trustee or acting as agent for the trustee or beneficiary under a Deed of Trust dated 08/23/07, executed by **ANGEL VELASQUEZ, A MARRIED MAN,** as Trustor(s), to secure certain obligations in favor of **Mortgage Electronic Registration Systems, Inc.,** as Beneficiary, recorded 09/06/06, as Book No. ,  Page No. ,  and Instrument No. **2006-17622,** of Official Records in the Office of the Recorder of **Mendocino** County, California, describing land therein **as more fully described in said Deed of Trust.**

Said obligations including (1) NOTE(S) FOR THE ORIGINAL sum of  **$445,600.00,** that the beneficial interest under such Deed of  trust and the obligation secured thereby are presently held by the undersigned;  that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The monthly installment of principal and interest which became due on 08/01/07, and all subsequent installments, together with late charges as set forth in said Note and Deed of Trust, advances, assessments and attorney fees. Nothing in this notice shall be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms of the loan documents.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  11/28/07           **Northwest Trustee Services, Inc.**
                            **As Agent For Beneficiary**
                            **By:  Fidelity National Title Insurance Company, As Agent**

By:  _____
                    Authorized Signatory
                    ʻRUBI NGOʼ

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

2007-21392
Pg:2/2

**EXHIBIT 4**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ **2008-02927**
**Pg: 1/1**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

Avelo Mortgage, LLC
250 John W. Carpenter Freeway, Suite 300
Irving, TX 75039

2008-02927
Recorded at the request of
TITLE COURT SERVICE
03/04/2008 01:13P
Fee: 8.00 No of Pages: 1

OFFICIAL RECORDS
Susan M. Ranochak, Clerk-Recorder
Mendocino County, CA

---

File No. 8102.20627                Title Order E732667         MIN No. 1001310-
                                                                2060629567-1

Loan No. 100456425

**IMPORTANT NOTICE**

Note:  After having been recorded, this Assignment should be kept with the Note and Deed of Trust hereby
assigned

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
**AVELO MORTGAGE, LLC**
all beneficial interest under that certain Deed of Trust dated **08/23/07**, executed by
**ANGEL VELASQUEZ, A MARRIED MAN** to **First American Title Insurance Company**, as
Trustee; and recorded **09/06/06**, as Instrument No.**2006-17622**, Book n/a ,Page n/a, of
Official Records in the County Recorder of **Mendocino** County, California.

TOGETHER with the note or notes therein described and secured thereby, the money
due and to become due thereon, with interest, and all rights accrued or to accrue under
said Deed of Trust including the right to have reconveyed, in whole or in part the real
property described therein.

Dated: 11/28/2007

**Mortgage Electronic Registration
Systems, Inc. as Nominee for American
Mortgage Network, Inc. by Northwest
Trustee Services, Inc. as Atty-in-Fact**

Karen Talafus, Authorized Signor

State of _____ CA _____
County of _____ ORANGE _____

On 11/28/2007 before me, _____ J. Barragan_____ Notary Public, personally
appeared _____ Karen Talafus personally or , who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same and his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

J. BARRAGAN
Commission # 1635125
Notary Public - California
Orange County
My Comm. Expires Jan 5, 2010

**EXHIBIT 5**

2008-02928
Pg: 1/1

Recording requested by:

When recorded mail to:
Northwest Trustee Services, Inc.
505 N. Tustin Ave., Suite 243
Santa Ana, CA 92705

2008-02928
Recorded at the request of
TITLE COURT SERVICE
03/04/2008 01:13P
Fee: 8.00 No of Pages: 1

OFFICIAL RECORDS
Susan M. Ranochak, Clerk-Recorder
Mendocino County, CA

File No. 8102.20627
Loan No. 100456425

Title Order No. E732667

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

MIN No. 1001310-2060629567-1

## SUBSTITUTION OF TRUSTEE

WHEREAS, **First American Title Insurance Company** was the original Trustee under that certain Deed of Trust dated **08/23/07**, executed by **ANGEL VELASQUEZ, A MARRIED MAN** to secure certain obligations in favor of **Mortgage Electronic Registration Systems, Inc.,** as Beneficiary, recorded 09/06/06, as Instrument No.2006-17622, of Official Records in the Office of the Recorder of Mendocino County, California and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires, to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes **Northwest Trustee Services, Inc.,** whose address is: **505 N. Tustin Ave., Suite 243, Santa Ana, CA 92705,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 11/28/2007

**AVELO MORTGAGE, LLC by Northwest Trustee Services, Inc. as Atty-In-Fact**

By: Karen Talafus, Authorized Signor

State of ___CA_____        )
                           )ss.
County of __ORANGE____     )

On 11/28/2007 before me,_____J. Barragan _____, Notary Public, personally appeared _____Karen Talafus personally or , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same and his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

J. BARRAGAN
Commission # 1636125
Notary Public - California
Orange County
My Comm. Expires Jan 5, 2010

(Seal)

**EXHIBIT 6**

|| 2008-02929
Pg:1/1

Recording requested by:

2008-02929
Recorded at the request of
TITLE COURT SERVICE
03/04/2008 01:13P
Fee: 8.00 No of Pages: 1

When recorded mail to:
**NORTHWEST TRUSTEE SERVICES, INC.**
**505 N. Tustin Avenue, Suite 243**
**Santa Ana, CA 92705**

OFFICIAL RECORDS
Susan M. Ranochak, Clerk-Recorder
Mendocino County, CA

Space above this line for recorder's use only

| File No. 8102.20627 | Title Order No. E732667 | MIN No. 1001310-2060629567-1 |

Loan No. 100456425

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 08/23/07. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in §5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

Trustor(s): **ANGEL VELASQUEZ, A MARRIED MAN**
Recorded: **09/06/06**, as Instrument No. **2006-17622**, of Official Records of **Mendocino**, California.
Date of Sale:    **03/26/08**       at **10:00 AM**
Place of Sale: **At the main entrance to the Mendocino County Courthouse, 100 North State Street, Ukiah, CA**
The purported property address is: **38020 Old Stage Road, Gualala, CA 95445**
Assessors Parcel No. **144-234-15-00**

The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$464,386.80.**

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date:_____03/01/2008_____

**NORTHWEST TRUSTEE SERVICES, INC., as Trustee**

Linda Mayes, Authorized Signatory
505 N. Tustin Avenue, Suite 243
Santa Ana, CA 92705

Sale Info website: www.USA-Foreclosure.com
Reinstatement and Pay-Off Requests: (866) 387-NWTS

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

## PROOF OF SERVICE

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On August 21, 2008, I served the within **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS** on all interested parties in this action as follows:

[X]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Angel Valesquez
38020 Old State Road
Gualala, CA 95445
707-884-9510
Attorney for Plaintiff in Pro Se

Steven K. Linkon, Esq.
Routh Crabtree Olsen
3535 Factoria Blvd. SE, Ste 200
Bellevue, WA 98004
425-586-1952; fax: 425-283-5952
Attorneys for Northwest Trustee Services, Inc.

U.S. District Court
Northern District
450 Golden Gate Ave
San Francisco, CA 94612

[X]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

1

1  [ ]    (BY FACSIMILE) The facsimile machine I used, with telephone no. (949)
2         477-9200, complied with California Rules of Court, Rule 2003, and no error
3         was reported by the machine.

4  [ ]    (BY FEDERAL EXPRESS - NEXT DAY DELIVERY) I placed true and
5         correct copies of thereof enclosed in a package designated by Federal
        Express with the delivery fees provided for.
6

7  []     (State) I declare under penalty of perjury under the laws of the state of
8         California that the foregoing is true and correct.

9  [x]     (Federal) I declare under penalty of perjury under the laws of the United
        States of America that the foregoing is true and correct.
10
        Executed on August 21, 2008, at Newport Beach, California.
11

12

13  Gretchen Grant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2